UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
| | |
|---|---|
| | : Case No. |
| EXCHANGE LISTING, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : **COMPLAINT** |
| | : |
| INSPIRA TECHNOLOGIES, LTD., A/K/A, | : |
| INSPIRA TECHNOLOGIES OXY B.H.N. LTD., | : |
| and JOE HAYON. | : |
| | : |
| | : Demand for Jury Trial |
| Defendants. | : |
| | : |

------------------------------------------------------------x

Plaintiff Exchange Listing, LLC ("Plaintiff" or "Exchange Listing"), by and through its attorneys, Carmel, Milazzo & Feil LLP, alleges for its Complaint against Defendants Inspira Technologies Oxy B.H.N., Ltd. ("Inspira") and Joe Hayon ("Hayon") (collectively, the "Defendants") as follows:

## NATURE OF THE ACTION

1.     This is an action to recover damages for unpaid compensation for services Plaintiff performed for Defendant Inspira, which, through Plaintiff's great effort and resources, resulted in Defendant Inspira achieving what many companies try and fail to achieve – an initial public offering.

2.     As alleged below, Exchange Listing and Defendant Inspira entered into a Capital Market Advisory Agreement[1] on September 30, 2020.

---

[1] A true and correct copy of the Capital Market Advisory Agreement is annexed hereto as **Exhibit 1**.

3.     The Agreement provides in pertinent part that Exchange Listing would provide its financial advisory services and resources to assist with Defendant Inspira's plans for an initial public offering ("IPO").  As alleged more fully below, Exchange Listing performed fully under the Agreement, providing Defendants valuable resources and services necessary for Defendant Inspira to complete the IPO.

4.     Plaintiff's services included, but were not limited to, introducing Defendant Inspira to several bankers from whom Defendant Inspira could choose one to be the underwriter for the IPO (the "Introduced Bankers").

5.     Defendant Inspira retained one of the Introduced Bankers, The Benchmark Company, LLC ("Benchmark") to act as underwriter for the IPO.  However, after Plaintiff had performed almost all of the work necessary for Defendant Inspira's IPO over a period of several months, Defendants terminated Benchmark, and then wrongfully and improperly purported to terminate the Agreement. Realizing that it still required Plaintiff's services and connections to complete the IPO, Defendants – despite having purported to terminate the Agreement – asked Plaintiff to continue the work it had started and promised to pay Plaintiff 75,000 shares of Inspira's stock (the "Oral Contract").  The Oral Contract was memorialized in Defendant Inspira's Form F-1 filing with the Securities and Exchange Commission.

6.     Defendants, however, had no intention of making good on their promise.  To the contrary, Defendants knew they could dangle the carrot of compensation to induce Plaintiff to help get Inspira to the finish line of its IPO, and then simply refuse to pay.  That is precisely what happened.

7.     Defendants, however, never intended to pay the 75,000 shares of Inspira's stock.

8.      As shown below, Plaintiff suffered damages as a direct and proximate result of Defendant Inspira's breach of the original Agreement and suffered further damages because of Defendant Inspira's breach of the subsequent Oral Contract, as well as damages resulting from Defendants' fraud.

## **THE PARTIES**.

9.      Plaintiff Exchange Listing is a limited liability company which conducts regular business in the state and county of New York. The members of Exchange Listing are Peter Goldstein and Brian Cavalli. Peter Goldstein is a citizen of Florida and Brian Cavalli is a citizen of New Jersey.

10.     Upon information and belief, Defendant Inspira is an Israeli corporation listed on the Nasdaq Capital Markets exchange, with its principal place of business located in Raanana, Israel.

11.     Upon information and belief, Defendant Hayon is an individual and the Chief Financial Officer, President, Director, and Co-Founder of Defendant Inspira and is a resident and domiciliary of the country of Israel.

## **JURISDICTION AND VENUE**

12.     This Court has personal jurisdiction over Defendants because Defendant Inspira consented to personal jurisdiction in New York, and Defendants both transacted business in New York. Jurisdiction is proper because the Agreement contains a clause specifying that New York is the exclusive jurisdiction for all disputes arising out of the Agreement. All parties conduct business in the state of New York and did so in connection with the Agreement at issue. Further, the Oral Contract at issue was negotiated and agreed to between the parties in person in the state and county of New York.

13.     Venue is proper in New York State Supreme Court, New York county because: (i) the IPO itself took place in this county; (ii) Defendant Inspira is listed on the Nasdaq in this county; (iii) all the parties do business in this county; (iv) the escrow funds for the IPO were held in a bank in this county; (v) Defendants met with bankers in this county; (vi) the virtual road show was worked on in this county; and (vii) the negotiation and agreement to the Oral Contract took place in this county.

## FACTS COMMON TO ALL CLAIMS

**Background**

14.     Plaintiff Exchange Listing is in the business of providing strategic advisory and other services to pre-IPO emerging growth companies that are seeking to list on a senior stock exchange such as Nasdaq Capital Markets, the New York Stock Exchange ("NYSE"), the NEO Exchange ("NEO"), and other internationally recognized exchanges.

15.     In or about September of 2020, Defendants sought to engage Exchange Listing to assist Defendant Inspira in an initial public offering ("IPO") of its stock.

16.     The parties – through Jonathan Blum and Gregg Jaclin (for Plaintiff) and Dagi Ben-Noon and Joe Hayon (for Defendant Inspira) – had several Zoom meetings during September 2020 to discuss how Exchange Listing could assist Defendants towards its goal of completing an IPO and listing on a national exchange.

17.     These discussions culminated on or about September 30, 2020, when Exchange Listing and Defendant Inspira entered a written Capital Market Advisory Agreement, dated September 30, 2020 (the "Agreement") whereby Plaintiff would provide various advisory services to Defendant Inspira to assist Defendant Inspira in a potential IPO.

18.     The term of the Agreement was no less than six (6) months from the date of the

Agreement or until Inspira was trading on NASDAQ Capital Markets (unless terminated in

accordance with the terms of the Agreement).  (Agreement § 2.)

19.     Section 1(C) of the Agreement set forth the specific work to be performed by

Exchange Listing in connection with Defendant Inspira's potential IPO, and provides, in pertinent

part, as follows:

C. *Scope of Work.*

1. Capital Markets Advisory – Provide an array of capital markets services,
enabling the Company to better achieve its financial goals of trading on Nasdaq
Capital Markets ("Nasdaq") through an initial public offering of the Company's
securities (the "IPO") within the preliminary timeline attached hereto as Schedule
A. Specific scope of services:

    1.1.     Assist the Company with a capital markets road map, including strategy,
development and execution;

    1.2.     Assist the Company with structuring its capitalization table and preparing
for the IPO;

    1.3.     Introduce the Company to investment bankers (the "Introduced Bankers")
to underwrite the IPO;

    1.4.     Introduce the Company to the service providers required for the IPO
including legal counsel, accounting/auditing firms, transfer agent, Edgar
agent, investor relations firms and others;

    1.5.     Assist the Company with preparation of its Registration Statement to be
filed with the Securities and Exchange Commission ("SEC") legal review and
responding to comments for same;

    1.6.     Manage the Nasdaq listing application process;

    1.7.     Render advice on the structuring of a financing, assisting the Company in
identifying and working with selected investors, placement agents and/or
underwriters; and

    1.8.     Review the Company's financial position and projections relating to the
Company's capital requirements, analyzing the pro forma effects of a
financing on such projections.

2.     Organizational meetings.  Weekly organizational meetings with the "working"
team to review developments, discuss potential challenges and establish action stps, results,
timelines and responsibilities.

3.     NASDAQ Listing Advisory.

    3.1.     Assist the Company with structuring and capitalization table and preparing
for the IPO; and

> 3.2     Assist and advise management with the public listing of the Company in complying with all listing requirements and as well as filing [the] Nasdaq listing application and managing the application process.

* * *

20.     Exchange Listing fully performed its obligations under Section 1(C) of the Agreement.

21.     For example, Exchange Listing provided extensive advisory services to Defendant Inspira in the areas of corporate development; corporate finance; general capital markets advisory services; preparing and organizing material used for a virtual road show with potential investors; preparing and filing the Nasdaq listing application; and addressing Nasdaq's comments with respect to the listing application with Nasdaq.

22.     Plaintiff also introduced several bankers to Defendants that could act as the underwriter for Defendant Inspira's prospective IPO.

23.     IPO underwriters play a crucial role in the IPO.  It is the underwriter that, *inter alia*, determines the initial offering price of the securities, buys the securities from the issuer, and sells the securities to investors via the underwriter's distribution network.

24.     The Introduced Bankers included, but were not limited to: Northland Securities, Inc., Ladenburg Thalmann & Co., Inc.; Maxim Group, LLC; Kingswood (now EF Hutton); H.C. Wainwright & Co.; ThinkEquity (a division of Fordham Financial Management); A.G.P./Alliance Global Partners; Craig-Hallum Capital Group, LLC; Lake Street Capital Markets, LLC; The Benchmark Company, LLC ("Benchmark"); and Univest Securities, LLC.

25.     Defendant Inspira subsequently retained Benchmark to be the lead underwriter for the IPO.

6

**Defendant Inspira Breaches the Agreement**

26.     By April 1, 2021, Exchange Listing had performed substantially all its obligations under the Agreement, including presenting Defendant Inspira with several suitable Introduced Bankers, one of whom, *i.e*., Benchmark, Defendant Inspira retained and maintained a relationship with for months.

27.     On April 1, 2021, Defendant Hayon sent Jonathan Blum of Exchange Listing a flurry of emails regarding the status of the IPO.

28.     Specifically, Defendant Hayon informed Exchange Listing that Defendant Inspira had terminated Benchmark as lead underwriter for what Defendant Hayon described as "unacceptable conduct."[2]

29.     In the same email, Defendant Hayon further informed Exchange Listing that Defendant Inspira was terminating the Agreement as of April 1, 2021, unless Exchange Listing agreed to amend the terms of the Agreement.[3]

30.     Specifically, Defendant Hayon stated that if Exchange Listing did not acquiesce to amending the Agreement, "[Defendant Inspira] will have no choice but to terminate the [A]greement as of today, 1st April 2021."

31.     There was no basis under the Agreement which permitted Defendant Inspira to terminate the Agreement.  Indeed, the Agreement only allowed for Defendant Inspira to terminate the Agreement under certain circumstances, as provided in Section 9 of the Agreement, none of which were present.

---

[2] The April 1 email in which Defendant Hayon indicated that Defendant Inspira terminated Benchmark is annexed hereto as **Exhibit 2**.

[3] *See id.*

32.     Upon information and belief, the foregoing improper termination was a pretext to avoid paying Plaintiff the agreed upon compensation under the Agreement.

33.     At this juncture, Exchange Listing had fully performed its obligations under the Agreement and had not breached any of the terms of the Agreement.  Plaintiff was willing and able to re-introduce and foster relationships between Defendant Inspira and other Introduced Bankers to serve as the underwriter without affecting the prospects of a successful IPO.

34.     By email dated April 1, 2021, Jonathan Blum informed Defendants that Exchange Listing was not willing to amend the Agreement.[4]  Defendants did not respond to this email.

35.     Defendants, despite having no basis to terminate the Agreement, treated the Agreement as terminated as of April 2, 2021. The foregoing constituted an anticipatory repudiation of the Agreement by Defendant Inspira.

36.     As a result, Plaintiff also deemed the Agreement terminated.

37.     Defendant Inspira's improper termination of the Agreement prevented Plaintiff's ability to continue performance under the Agreement because Plaintiff could not introduce new bankers to Defendant Inspira to act as the underwriter for the IPO.

38.     Defendant Inspira's improper termination of the Agreement on April 1, 2021 worked to prevent the condition precedent to Plaintiff's compensation – closing the IPO with an Introduced Banker – with the intent of terminating the Agreement to prevent Plaintiff from being able to satisfy that condition precedent.

39.     Further, the April 1, 2021 email in which Defendant Hayon stated that if Exchange Listing did not acquiesce to amending the Agreement, "[Defendant Inspira] will have no choice but to terminate the [A]greement as of today, 1st April 2021" constituted an anticipatory breach of

---

[4] The April 1 email in which Jonathan Blum indicated that Exchange Listing was unwilling to amend the terms of the Agreement is annexed hereto as **Exhibit 3**.

the Agreement because Defendants unequivocally threatened termination of the Agreement – and, naturally, cessation of Defendant Inspira's performance obligations thereunder – unless Exchange Listing agreed to amend the terms of the Agreement.

40.     Upon receiving the ultimatum from Defendants, Plaintiff remained ready, willing, and able to perform its obligations under the Agreement when such performance became due.

41.     Defendants did not give an opportunity to Exchange Listing to address any issues between Defendant Inspira and Benchmark or the opportunity to secure another banker to act as underwriter for Defendant Inspira's prospective IPO.

42.     This foreclosed the possibility of Exchange Listing's performance and entitlement to the lion's share of its compensation under Section 4 of the Agreement.

43.     Specifically, Defendant Inspira's breaches of the Agreement precluded Exchange Listing from fostering a relationship between Defendants and another Introduced Banker.

44.     Significantly, Exchange Listing would receive the following compensation under Section 4 if Defendant Inspira completed the IPO with an Introduced Banker:

A. $5,000 per month with such amount to commence accruing upon retention of an Introduced Banker and with the payments to commence upon completion of the Safe Financing;

B. A bonus of $25,000 upon completion of the Safe Financing;

C. $50,000 payable at such time as the Company completes the IPO;

D. The Company will issue the Consultant, shares of the company's common stock at such time as the Company completes its IPO in accordance with the fee schedule set forth in Schedule B attached hereto, and pursuant to the terms and conditions this Agreement. The Company agrees to include the shares of common stock in the registration statement to be filed by the Company with the SEC; and

E. The Company shall promptly reimburse Consultant for any pre-approved costs and expenses incurred by Consultant in connection with any Services performed by Consultant pursuant to the terms of the Agreement.

45.     Defendant Inspira's breach and improper termination of the Agreement resulted in substantial damages to Exchange Listing.

**Defendant Inspira and Exchange Listing Enter into an Oral Contract**

46.     After unilaterally terminating the Agreement on April 1, 2021, Defendant was faced with an inconvenient reality.

47.     Defendant Inspira realized that it needed Plaintiff's resources, services, and performance to successfully close the IPO.

48.     Defendant Hayon contacted Blum and Jaclin and requested that they meet them in New York City for dinner of April 15, 2021.

49.     The parties met on April 15, 2021 in New York at Del Frisco's Double Eagle Steakhouse to discuss the status of Defendant Inspira's prospective IPO.

50.     Present at this meeting were Jonathan Blum and Gregg Jaclin from Exchange Listing; Defendant Joe Hayon and Dagi Ben-Noon ("Ben-Noon") from Defendant Inspira; and Miri Segal from MS-IR LLC, which handled investor relations for Defendant Inspira.

51.     Hayon and Ben-Noon were in New York primarily because they planned to meet with National Securities Corp. ("National") to explore engaging National as Defendant Inspira's new underwriter for the IPO.

52.     At the meeting, Defendant Hayon implored Exchange Listing to assist in the final stages of Defendant Inspira's preparation for the IPO, despite Defendant Inspira having improperly terminated the Agreement with Exchange Listing on April 1, 2021.

53.     Hayon realized that Exchange Listing's expertise and relationships was necessary if Inspira was to close the IPO in the near future as it sought to do.

54.     Indeed, at the meeting, Hayon expressed a desire to keep the underwriter counsel introduced to Inspira by Exchange Listing, Lucosky Brookman, LLP ("Lucosky"), and which had been retained to represent Benchmark, engaged as underwriter counsel for the new underwriter. Upon information and belief, Hayon believed that the only way it could quickly close the IPO was by leveraging Plaintiff's knowledge and the relationships it had fostered, including the relationship with Lucosky.

55.     As the Agreement was deemed terminated, Plaintiff owed no further performance to Defendant Inspira and had no reason to perform without assurances of compensation.

56.     As consideration for bringing Exchange Listing back into the fold after improperly terminating the Agreement two weeks earlier, Defendant Hayon, to induce Plaintiff to provide necessary assistance to Inspira, offered that Defendant Inspira would compensate Exchange Listing for its assistance in the final stages of the IPO preparation process (the "Oral Contract").

57.     Specifically, Defendant Hayon agreed that Defendant Inspira would pay Exchange Listing 75% of its fees that were due under the Agreement, since Defendant Inspira was not proceeding with an Introduced Banker.

58.     Defendant Hayon explained that this compensation would amount to approximately 75,000 Ordinary Shares upon the closing of the IPO.

59.     Exchange Listing agreed to the offer made by Defendants and the consideration offered for Exchange Listing's proposed performance.

60.     Defendant Hayon made this promise to induce Exchange Listing to enter the Oral Contract.

61.     Defendant Hayon made this promise with the preconceived and undisclosed intent of not compensating Plaintiff as agreed in the Oral Contract.

62.     In a Form F-1, filed with the Securities and Exchange Commission ("SEC")[5] on July 1, 2021 (only days before the completion of the IPO), Defendant Inspira memorialized the fact that Defendant Inspira agreed to compensate Plaintiff with 73,321 Ordinary Shares upon the completion of the IPO in exchange for Plaintiff's performance under the Oral Contract. Specifically, Defendant Inspira represented in the Form F-1 as follows:

> **We agreed to issue to Exchange Listing, LLC, in consideration for their advisory and consulting services, 73,321 Ordinary Shares upon our initial public offering on the Nasdaq Capital Market.**

63.     In fact, Defendant Inspira stated this *verbatim* on both on pages 59 and 103 of the F-1.

64.     Exchange Listing performed substantial services after entering into the Oral Contract by providing Defendant Inspira with substantial assistance in the final stages of its preparing for the IPO.

65.     Exchange Listing also helped transition the IPO to a new underwriter by keeping Lucosky engaged as underwriter counsel, as Defendant Inspira had requested while discussing the terms of the Oral Contract.

66.     On or about July 14, 2021, Defendant Inspira's IPO closed with a non-introduced banker, Aegis Capital ("Aegis") as lead underwriter.

67.     As such, Exchange Listing was owed the approximately 75,000 Ordinary Shares upon completion of the IPO, pursuant to the terms of the Oral Contract.

68.     However, Defendant Inspira breached the oral contract by failing to tender payment of the approximately 75,000 Ordinary Shares to Plaintiff upon completion of the IPO.

---

[5] A true and correct copy of Defendant Inspira's F-1 filed with the SEC on July 1, 2021 is annexed hereto as **Exhibit 4**.

69.     To date, Defendant Inspira has failed and refused to tender the agreed upon stock to Plaintiff as required under the terms of the Oral Contract.

70.     Exchange Listing relied to its detriment on the promise by Defendant Hayon that Exchange Listing would be paid for its services and performance under the Oral Contract.

71.     Plaintiff suffered damages as a direct and proximate result of not being compensated for its performed services under the Oral Contract.

72.     Specifically, Exchange Listing provided its services to Defendant Inspira pursuant to the Oral Contract and never received any compensation or consideration of any kind for those services.

**FIRST CAUSE OF ACTION**
**(Breach of Original Agreement as against Defendant Inspira)**

73.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

74.     The Agreement is a valid, binding, and enforceable contract.

75.     Plaintiff performed substantially all its obligations under the Agreement and was ready, willing, and able to continue performance under the Agreement when it became due.

76.     Defendant Inspira accepted Exchange Listing's performance under the Agreement and benefitted substantially from Exchange Listing's performance.

77.     Notably, Defendant Inspira benefitted from Exchange Listing's extensive resources and financial advisory services.

78.     Defendant Inspira breached the Agreement on April 1, 2021 by improperly purporting to terminate the Agreement without legal basis.

79.     Specifically, Defendant Inspira terminated the Agreement without cause and outside the scope of the permitted grounds for termination provided by Section 9 of the Agreement.

80.     Thus, Defendant Inspira's termination of the Agreement on April 1, 2021 violated the terms of the Agreement, specifically Section 9, and constituted an anticipatory repudiation of the Agreement.

81.     Further, Defendant Inspira's termination of the Agreement on April 1, 2021 frustrated the conditions of the Agreement because Defendant Inspira did so with the intent to prevent Plaintiff from introducing a banker with whom Defendant Inspira could complete the IPO, which was a condition precedent to Plaintiff receiving the lion's share of compensation provided for in the Agreement.

82.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $5,000.00 per month beginning on the date the SAFE Financing was completed; $25,000.00 upon completion of the SAFE Financing; $50,000.00 upon completion of the IPO; shares of common stock at the time of the IPO, pursuant to Schedule B of the Agreement; and reimbursement for costs and expenses incurred in connection with Plaintiff's performance under the Agreement, plus interest accrued since Defendant Inspira's breach of the Agreement on April 1, 2021 until the date of judgment.

## SECOND CAUSE OF ACTION
### (Breach of Oral Contract as Against Defendant Inspira)

83.     Plaintiff repeats and realleges all the allegations set forth above as if set forth in full detail herein.

84.     The Oral Contract is a valid, binding, and enforceable contract.

85.     On or about April 15, 2021, Defendants offered to compensate Plaintiff with approximately 75,000 Ordinary Shares in exchange for Plaintiff's performance of financial advisory services during the final stages of the pre-IPO process.

86.     Plaintiff accepted the offer and both parties intended to be bound by the terms of the Oral Contract agreed to on April 15, 2021.

87.     Plaintiff Exchange Listing performed all its obligations under the Oral Agreement.

88.     Plaintiff provided extensive financial advisory services to Defendant Inspira pursuant to the terms of the Oral Contract, including but not limited to working to maintain Lucosky as underwriter counsel, as Defendants requested when the offer was made.

89.     Defendant Inspira accepted Plaintiff's performance under the Oral Contract and benefitted substantially from Plaintiff's performance by, *inter alia*, completing a successful IPO.

90.     Defendant Inspira breached the Oral Contract by not compensating Plaintiff for the services rendered by Plaintiff to Defendant's benefit under the Oral Contract.

91.     Defendant Inspira owed consideration in the form of approximately 75,000 Ordinary Shares upon the completion of Defendant Inspira's IPO with a non-Introduced Banker on July 14, 2021.

92.     Defendant Inspira failed to make payment of the shares owed to Plaintiff on July 14, 2021 and has not made any such payment to date.

93.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than approximately 75,000 Ordinary Shares of Defendant Inspira, or their cash equivalent, plus interest accrued since Defendant Inspira's breach of the Oral Contract on July 14, 2021.

### THIRD CAUSE OF ACTION
### (Promissory Estoppel as Against Defendant Inspira)

94.     Plaintiff repeats and realleges all the allegations set forth above as if set forth in full detail herein.

95.     Defendant Inspira terminated the Agreement on April 1, 2021.

96.    On April 15, 2021, Defendant Inspira (through Defendant Hayon) clearly and unambiguously promised to provide consideration to Plaintiff of approximately 75,000 Ordinary Shares of Defendant Inspira upon Defendant Inspira's successful IPO if Plaintiff agreed to perform its financial advisory services to Defendant Inspira during the final stages of the pre-IPO process.

97.    But for Defendant Inspira's promise on April 15, 2021 to pay Plaintiff approximately 75,000 Ordinary Shares for Exchange Listing's services leading up to Defendant Inspira's IPO, Plaintiff would have never provided such services given that the previous Agreement was terminated.

98.    Plaintiff reasonably and foreseeably relied to its detriment on Defendant Inspira's promise to provide consideration in the form of 75,000 Ordinary Shares upon the completion of the IPO by continuing to provide its services to Defendant Inspira after April 15, 2021, at which point the original Agreement was terminated.

99.    As a direct and proximate result of Plaintiff's reasonable reliance on Defendant Inspira's clear, unambiguous promise to provide the consideration described above, Plaintiff performed its financial advisory services for Defendant Inspira between April 15, 2021 and July 14, 2021 and was never compensated or given any consideration whatsoever for those services.

100.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than approximately 75,000 Ordinary Shares of Defendant Inspira, or their cash equivalent, plus interest accrued from the time such payment became due and payable on July 14, 2021 to the date of judgment.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit as to the Termination of the Written Agreement as Against Defendant Inspira)

101.   Plaintiff repeats and realleges all the allegations set forth above as if set forth in full detail herein.

102.   Plaintiff performed its services under the Agreement in good faith.

103.   Defendant Inspira accepted the services rendered by Plaintiff pursuant to the Agreement with the understanding that it would be obligated to provide consideration to Plaintiff for those services.

104.   Plaintiff expected to be compensated for rendering the financial advisory services it rendered to Defendant Inspira pursuant to the terms of the Agreement.

105.   Both parties understood that Defendant Inspira would be obligated to provide consideration to Plaintiff for the services Plaintiff rendered pursuant to the terms of the Agreement.

106.   On April 1, 2021, Defendant Inspira terminated the Agreement with Plaintiff after threatening to do so unless Plaintiff agreed to amend the Agreement presumably to significantly reduce the agreed upon compensation.

107.   Plaintiff did not agree to amend the Agreement.

108.   Defendant Inspira's termination of the Agreement on April 1, 2021 wrongfully prevented Plaintiff from being able to perform its financial advisory services under the Agreement or enjoy the benefit of the bargain that would flow from the continuation of the Agreement and Plaintiff's continued performance thereunder.

109.   Namely, Defendant Inspira prevented Plaintiff from presenting another Introduced Banker to act as underwriter for the IPO.

110.    As such, Defendant Inspira prevented Plaintiff from substantial compensation it would have been able to obtain under the specific provisions regarding Introduced Bankers under Section 4 of the Agreement.

111.    Further, Defendant Inspira's wrongful prevention of Plaintiff's performance resulted in substantial damages to Plaintiff in the form of reasonable value of the services Plaintiff rendered to Defendant Inspira.

112.    Defendant Inspira's wrongful prevention of Plaintiff's performance produced the unconscionable result of Plaintiff performing under the Agreement from September 30, 2020 through April 1, 2021 without any consideration for that performance whatsoever.

113.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $250,000.

### FIFTH CAUSE OF ACTION
### (Quantum Meruit as to Post April 15, 2021 Services Against Defendant Inspira)

114.    Plaintiff repeats and realleges all the allegations set forth above as if set forth in full detail herein.

115.    After Defendant Inspira had already terminated the original Agreement, Plaintiff performed its advisory services for Defendant Inspira after the April 15, 2021 Oral Contract was agreed upon in good faith.

116.    Plaintiff performed these services with the understanding that Defendant Inspira would be obligated to provide consideration to Plaintiff for the services.

117.    Defendant Inspira accepted Plaintiff's services after the April 15, 2021 meeting and achieved its IPO as a direct and proximate result of those services.

118.    Defendant Inspira accepted Plaintiff's services under the Oral Contract with the understanding that there was an obligation to provide consideration to Plaintiff for those services.

119.     Plaintiff performed these services with the expectation that it would receive consideration in the form of approximately 75,000 Ordinary Shares, as promised by Defendants at the April 15, 2021 meeting and agreed to by Plaintiff under the Oral Contract.

120.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $100,000.

**SIXTH CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing as Against Defendant Inspira)**

121.     Plaintiff repeats and realleges all the allegations set forth above as if set forth in full detail herein.

122.     Defendant Inspira anticipatorily breached the Agreement on April 1, 2021.

123.     Defendant Inspira's anticipatory breach of the Agreement resulted in Plaintiff not receiving the fruits of its performance and services under the terms of the Agreement.

124.     Defendant Inspira breached the covenant of good faith and fair dealing by demanding extracontractual conditions as an ultimatum to Plaintiff with the alternative being Defendant Inspira's termination of the Agreement, thereby foreclosing Plaintiff's ability to realize compensation provisions provided under Section 4 of the Agreement.

125.     Defendant Inspira's anticipatory breach and termination of the Agreement directly and proximately prevented Plaintiff's right to perform under the Agreement.

126.     Even if Defendant Inspira was within its rights to terminate the Agreement on April 1, 2021, it exercised that contractual right as a part of a scheme to realize gains that the contract implicitly denies.

127.     Further, Defendant Inspira terminated the Agreement on April 1, 2021 as part of a concerted effort to deprive Plaintiff the benefit of the bargain.

128.    Plaintiff suffered damages in the amount of services rendered that went uncompensated due to Defendant Inspira's breach of the covenant of good faith and fair dealing and damages in the amount of compensation which Plaintiff was foreclosed from receiving once Defendant Inspira terminated the Agreement.

129.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than $5,000.00 per month beginning on the date the SAFE Financing was completed; $25,000.00 upon completion of the SAFE Financing; $50,000.00 upon completion of the IPO; shares of common stock at the time of the IPO, pursuant to Schedule B of the Agreement; and reimbursement for costs and expenses incurred in connection with Plaintiff's performance under the Agreement, plus interest accrued from April 1, 2021 to the date of judgment.

### SEVENTH CAUSE OF ACTION
**(Fraud in the Inducement as Against Defendants Inspira and Hayon)**

130.    Plaintiff repeats and realleges all the allegations set forth above as if set forth in full detail herein.

131.    Defendant Hayon is an officer of Defendant Inspira and has a legal obligation to not make material misrepresentations in his business dealings on behalf of Defendant Inspira.

132.    On April 15, 2021, Defendants knowingly represented to Exchange Listing that the latter would receive approximately 75,000 Ordinary Shares upon completion of the IPO as consideration for Plaintiff's services to assist Defendant Inspira in the final stages of the pre-IPO process.

133.    The promise of consideration in the form of 75,000 Ordinary Shares is a material misrepresentation because its existence or nonexistence would lead a reasonable person to change his or her conduct with regards to the underlying transaction, namely, the Oral Contract.

134.    Defendants made this promise with a preconceived and undisclosed intent to defraud Plaintiff by not compensating Plaintiff in accordance with Defendants' promise.

135.    Put another way, Defendants offered the consideration to Plaintiff with no intention of acting upon or honoring the promised consideration.

136.    Defendants made this misrepresentation with the intent of inducing Plaintiff to enter the Oral Contract.

137.    Defendants' misrepresentation induced Plaintiff into entering the Oral Contract with Defendant Inspira on April 15, 2021.

138.    Plaintiff reasonably relied on Defendants' misrepresentation because, but for Defendants' misrepresentation, Plaintiff would not have entered the Oral Agreement with Defendant Inspira because the original Agreement was terminated and Plaintiff would not have entered the Oral Contract without concrete, unequivocal assurance of consideration for any future performance by Plaintiff.

139.    Plaintiff suffered damages as a direct and proximate result of Defendants' misrepresentations, which induced Plaintiff to enter the Oral Contract.

140.    Plaintiff performed fully under the Oral Contract and received no compensation whatsoever for that performance.

141.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than approximately 75,000 Ordinary Shares of Defendant Inspira, or their cash equivalent, plus interest accrued from July 14, 2021 to the date of judgment.

## EIGHTH CAUSE OF ACTION
### (Attorney's Fees as Against Defendant Inspira)

142.    Plaintiff repeats and realleges all the allegations set forth above as if set forth in full detail herein.

143.    Plaintiff seeks prevailing party attorney's fees as provided in Section 11(B) of the Agreement.

144.    Defendants' breach and other actions resulting in the causes of action listed above will cause Plaintiff to incur substantial attorney's fees in the enforcement of this action.

145.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined and is entitled to judgment against Defendant Inspira for attorney's fees.

**WHEREFORE**, for the foregoing reasons, Plaintiff Exchange Listing demands judgment as follows:

(a) On the First Cause of Action, in favor of Plaintiff and against Defendant Inspira, in an amount to be determined at trial, but not less than $5,000.00 per month beginning on the date the SAFE Financing was completed; $25,000.00 upon completion of the SAFE Financing; $50,000.00 upon completion of the IPO; shares of common stock at the time of the IPO, pursuant to Schedule B of the Agreement; and reimbursement for costs and expenses incurred in connection with Plaintiff's performance under the Agreement, plus interest accrued since Defendant's Inspira's breach of the Agreement on April 1, 2021 until the date of judgment.;

(b) On the Second Cause of Action, in favor of Plaintiff and against Defendant Inspira, in an amount to be determined at trial, but not less than approximately 75,000 Ordinary Shares of Defendant Inspira, or their cash equivalent, plus interest accrued since Defendant Inspira's breach of the Oral Contract on July 14, 2021;

22

(c) On the Third Cause of Action, in favor of Plaintiff and against Defendant Inspira, in an amount to be determined at trial, but not less than approximately 75,000 Ordinary Shares of Defendant Inspira, or their cash equivalent, plus interest accrued from the time such payment became due and payable on July 14, 2021 to the date of judgment;

(d) On the Fourth Cause of Action, in favor of Plaintiff and against Defendant Inspira, in an amount to be determined at trial, but not less than $250,000.

(e) On the Fifth Cause of Action, in favor of Plaintiff and against Defendant Inspira, in an amount to be determined at trial, but not less than but not less than $100,000;

(f) On the Sixth Cause of Action, in favor of Plaintiff and against Defendant Inspira, in an amount to be determined at trial, but not less than $5,000.00 per month starting at the date the SAFE Financing was completed; $25,000.00 upon completion of the SAFE Financing; $50,000.00 upon completion of the IPO; shares of common stock at the time of the IPO, pursuant to Schedule B of the Agreement; and reimbursement for costs and expenses incurred in connection with Plaintiff's performance under the Agreement, plus interest accrued from April 1, 2021 to the date of judgment;

(g) On the Seventh Cause of Action, in favor of Plaintiff and against Defendant Inspira, in an amount to be determined at trial, but not less than approximately 75,000 Ordinary Shares of Defendant Inspira, or their cash equivalent, plus interest accrued from July 14, 2021 to the date of judgment;

(h) On the Eighth Cause of Action, in favor of Plaintiff and against Defendants Inspira, in an amount to be determined; and

(i) For such other and further relief as the Court deems just, equitable and proper.

Dated: March 4, 2022

CARMEL, MILAZZO & FEIL, LLP

By: /s/ Christopher P. Milazzo
Christopher P. Milazzo, Esq.
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0459 (tel.)

*Attorneys for Plaintiff*